James WEBB, Plaintiff,

v.

Donna GOLDSTEIN, Julie L. Schwartz, Rhonnie Jaus, Anthea H. Bruffee, Victor Barall, Charles J. Hynes, Sally B. Johnson, Anna Gibbs, James Raymond Avellini, James Mack, William McCartney, John Doe, Jane Doe, and John Doe, and Other Presently Unnamed Assistant District Attorneys, New York State Department of Correction Employees, Parole Officials, and Medical Staff at the Sullivan Correctional Facility All Individually and in Their Official Capacities, Defendants.

No. CV 99–2645(RR).

United States District Court, E.D. New York.

Sept. 29, 2000.

James Webb, Fallsburg, NY, pro Se.

The Honorable Michael D. Hess, New York City Corporation Counsel, New York City by Elisabeth C. Youngclaus, Rose Minna Weber, for City Defendants The City of New York.

The Honorable Elliot Spitzer, Attorney General of the State of New York, New York City by Lee Alan Adlerstein, for Sally B. Johnson, Anna Gibbs, James Mack, and William McCartney.

*Memorandum and ORDER*

RAGGI, District Judge.

Plaintiff James Webb is a New York State prisoner who is serving concurrent terms of twenty-five years to life as a result of his 1997 conviction on multiple counts of rape, sodomy, arson, and robbery. *See* Certificate of Disposition in *People v. Webb*. Ind. No. 15200–95, attached as Exh. B to City Def. Motion to Dismiss. Webb now sues Kings County District Attorney Charles J. Hynes; Assistant District Attorneys Julie Schwartz, Rhonnie Jaus, Anthea Bruffee, and Victor Barall; District Attorney's Office paralegal Donna Goldstein; Orleans Correctional Facility ("Orleans") Superintendent Sally Johnson; Orleans staff clerk Anna Gibbs; New York State Parole Officers James Mack and William McCartney; Dr. James

Raymond Avellini; as well as various unnamed assistant district attorneys and parole officers pursuant to 42 U.S.C. § 1983 (1994 & Supp.2000) for violations of his federal constitutional rights in connection with the investigation and prosecution of his criminal case. Webb claims that defendants' misconduct also violated rights protected by unspecified sections of the constitution and laws of New York State. Finally, Webb sues unnamed members of the medical staff at the Sullivan Correctional Facility ("Sullivan"), where he is presently housed, for denying him adequate medical treatment, thereby violating rights protected both by § 1983 and state law. He seeks total monetary damages of one billion dollars.

Motions to dismiss have been filed on behalf of the parole officers, prison officials, members of the district attorney's office, and Dr. Avellini. Having carefully reviewed the parties' papers in support of and opposition to these motions, the court concludes that plaintiff's § 1983 claims against these defendants must be dismissed because they either are premature, fail to state a claim, or are barred by the principle of qualified immunity. Although no motion is made on behalf of the medical staff at Sullivan, this court finds that any federal claims against them for inadequate medical treatment are not properly venued in this district. *See* 28 U.S.C. § 1391(b) (1994 & Supp.2000). The court directs the Clerk of the Court to transfer these claims to the Southern District of New York, where they could properly have been brought. *See* 28 U.S.C. § 1406 (1994).[1] With no federal claim remaining in this district against any party, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims against the parole officers, prison officials, district attorney's staff, or Dr. Avellini. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The

---

1. Plaintiff recently moved to amend his complaint to name Dr. Wladyslaw Sidorowicz as one of the individuals who violated his rights at Sullivan. This motion is transferred, along with the other Sullivan claims, to the Southern District of New York.

Clerk is directed to transfer these state law claims to the New York Supreme Court for Kings County.

### Factual Background

In December 1995, plaintiff James Webb was a state parolee being supervised in Brooklyn by defendant Officers James Mack and William McCartney.[2] At about this time, New York City police were investigating a serial rape case. Officers Mack and McCartney concluded that Webb had certain distinctive physical characteristics that matched those of the rape suspect and so notified the authorities, providing them with copies of plaintiff's prison medical records. On December 6, 1995, New York City police arrested Webb and charged him with numerous rapes.[3]

Webb asserts that DNA tests eventually cleared him of one of the rapes. Nevertheless, he insists that the defendant assistant district attorneys, acting under the direction of defendant District Attorney Hynes, conspired to fabricate evidence against him on the remaining charges or withheld evidence material to the defense.

Webb further complains that Officers Mack and McCartney improperly provided law enforcement officials with copies of plaintiff's medical records from his earlier incarceration at Orleans. Thereafter, prosecutors arranged for defendant Donna Goldstein to subpoena plaintiff's original prison medical records. In response to the subpoena, Superintendent Sally B. Johnson directed a prison clerk, defendant Anna Gibbs, to locate Webb's records and transmit them to the prosecutors.

Subsequent to receiving the medical records, prosecutors applied for a court order directing Webb to submit hair and saliva samples and to undergo a physical examination of his genital area. The order was granted, and plaintiff was examined by defendant Dr. James Raymond Avellini. Webb asserts that Dr. Avellini was negligent in his manual examination of plaintiff's testicles, thereby reversing the benefits of earlier corrective surgery and leaving him in constant pain.

Apparently, Webb's medical records and Dr. Avellini's examination further inculpated plaintiff in some of the charged crimes. Plaintiff moved to suppress this evidence on the grounds that the records were procured in violation of New York State law and that Dr. Avellini's testimony was directly derived from the illegally procured records. After conducting a hearing, the state court granted the motion to suppress the medical records.[4] Plaintiff submits that the judge found that "the District Attorney should not have subpoenaed [the medical] records without his consent." *See* Plaintiff's Aff. in Response to Def. Motions to Dismiss ¶ 60. It also appears that the subpoena may have been defective because the records were delivered to the district attorney's office rather than the court. *See People v. Natal,* 75 N.Y.2d 379, 385, 553 N.Y.S.2d 650, 653, 553 N.E.2d 239(1990) ("where the District Attorney seeks trial evidence the subpoena should be made returnable to the court"). Whatever defects there may have been with the subpoena, the trial court declined to suppress Dr. Avellini's testimony, finding that the district attorney's office had "independent knowledge that the perpetrator might have a medical condition causing azoospermia" and would inevitably have sought a physical examination. *See* Plaintiff's Aff.

---

**2.** Apparently, Webb had previously been convicted and incarcerated for unlawful imprisonment in connection with a 1973 rape and sodomy committed at gunpoint. *See People v. Webb,* 59 A.D.2d 618, 398 N.Y.S.2d 1 (2d Dep't 1977).

**3.** In an earlier § 1983 action filed with this court, Webb sued Parole Officers Mack and McCartney for their actions leading to his arrest. Adopting a Report and Recommendation of Magistrate Judge Joan M. Azrack, this court dismissed that case on March 27, 1997. *See Webb v. New York State Board of Parole, et al.,* CV 95–3659(RR).

**4.** The parties have not provided this court with a copy of the suppression ruling.

in Response to Def. Motions to Dismiss ¶ 60.

On October 29, 1997, Webb was found guilty by jury verdict of multiple counts of rape, sodomy, arson, and robbery. On December 23, 1997, he was sentenced to concurrent terms of twenty-five years to life imprisonment. Webb is presently incarcerated at the Sullivan Correctional Facility, where he claims prison officials are not providing him with adequate medical treatment for his genital problems.

### *Discussion*

#### I. *Standard of Review*

■ A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord* Fed.R.Civ.P. 12(b)(6); *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999). The court must accept all facts alleged in the complaint or in attached supporting documents as true and must draw all reasonable inferences in the light most favorable to the plaintiff. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d at 138 (citations omitted). Where, as here, a plaintiff proceeds pro se, the court is under a special duty liberally to construe his pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Sawyer v. American Fed'n of Gov't Employees, AFL–CIO,* 180 F.3d 31, 36 (2d Cir.1999).

#### II. *Section 1983 Claims Implicating the Validity of Webb's Conviction*

■ A liberal reading of Webb's complaint suggests that he is suing state prosecutors for violating his constitutional rights by (1) conspiring among themselves and with witnesses to manufacture evidence against him. (2) withholding material evidence from the defense, and (3) depriving him of his right to be present at pretrial proceedings relating to his physical examination. These claims must all be dismissed since each implicates the validity of the conviction for which Webb is presently incarcerated.

In *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court ruled that a prisoner could not sue for damages under § 1983 on claims that "necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Accord Jenkins v. Haubert,* 179 F.3d 19, 24–25 (2d Cir.1999).

Webb's claim that prosecutors manufactured false evidence plainly challenges the validity of his recent conviction. Indeed, it equates to a claim that without the challenged evidence there was insufficient proof to establish his guilt of the crimes charged beyond a reasonable doubt. Similarly, Webb's assertion that prosecutors withheld exculpatory evidence from the defense translates into a claim that he would not have been convicted if the proper disclosures had been made and, thus, that his present conviction was obtained in violation of due process. Finally, Webb's complaint about being absent from pre-trial proceedings is, at its core, an assertion that, in his absence, the trial court made erroneous rulings about the procurement and admissibility of evidence from a physical examination, without which he would not have been convicted.

None of these claims can be pursued under § 1983 while Webb's conviction stands. Accordingly, these claims are dismissed without prejudice to refile should petitioner succeed in having his conviction reversed, invalidated, or expunged.

#### III. *The Disclosure of Webb's Medical Records*

■ Webb complains that his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated by (1) Parole Officers Mack and McCartney when they disclosed portions

of his prison medical records to law enforcement authorities, (2) members of the district attorney's office when they requested his full prison medical records from Orleans, and (3) by Orleans Superintendent Johnson and clerical worker Gibbs when they transmitted his records to the prosecutors. Since these records were never received in evidence against Webb, this claim does not imply the invalidity of his conviction and is not barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383. Defendants nevertheless submit that these claims must be dismissed because (1) they do not state a violation of any federal right, and (2) defendants would, in any event, be protected from suit by absolute and qualified immunities.

This court agrees that Webb's complaint about defendants' dissemination of his prison medical records does not state a federal claim under the Fourth, Fifth, Eighth, or Fourteenth Amendments. As to the Fourteenth Amendment in particular, even if the facts were deemed sufficient to state a claim, the court finds that defendants would be entitled to dismissal on grounds of qualified immunity.[5]

A. *Fourth Amendment*

■ As a general rule, a person only has a Fourth Amendment expectation of privacy in documents that he owns or possesses. *See, e.g., United States v. Miller,* 425 U.S. 435, 440–442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (rejecting Fourth Amendment challenge to bank disclosure of depositor information). The medical records at issue in this case neither belonged to nor were ever in Webb's possession. They were the property of New York State. *See generally Gotkin v. Miller,* 514 F.2d 125, 129 (2d Cir.1975) (rejecting federal due process claim that New York law gives state residents a constitutionally protected property interest in

medical records maintained by health care providers).

■ The fact that Webb may have provided some of the information in the records expecting that it would be maintained confidentially would not be enough to allow him to raise a Fourth Amendment challenge to a third-party's disclosure. As the Supreme Court ruled in *United States v. Miller*:

> [T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

425 U.S. at 443, 96 S.Ct. 1619 (and cases cited therein); *see also Young v. Murphy,* 90 F.3d 1225, 1236 (7th Cir.1996) (patient has no standing to raise Fourth Amendment challenge to investigators' examination of nursing home records); 1 LaFave, *Search and Seizure* § 2.7(d) (1996 & Supp. 1999) (citing various state court cases relying on *Miller* to reject patients' Fourth Amendment challenges to the government's procurement of medical records from various health care institutions).

■ Webb's claim that defendants abused the subpoena process and failed to notify him before disseminating the records would also not be cognizable under the Fourth Amendment. *See S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 743, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) (customer could not bring a Fourth Amendment challenge to government's procurement of his bank records on the grounds that they were obtained pursuant to "defective subpoenas" or "that he was given no notice of the subpoenas"); *see also People v. Natal,* 75 N.Y.2d 379, 383–384, 553 N.Y.S.2d 650, 651–652, 553 N.E.2d 239

---

5. The court does not address the claim of absolute immunity since it would require further discovery regarding the subpoena that

was sent from the district attorney's office to the Orleans defendants.

(1990) (holding that prosecutor's abuse of subpoena power in procuring defendant's arrest clothes from prison did not state a claim under the Fourth Amendment).

For all these reasons, the court hereby dismisses Webb's Fourth Amendment claim.

### B. *Fifth Amendment*

To the extent Webb invokes the Fifth Amendment to challenge defendants' procurement of his prison medical records, the court is similarly obliged to dismiss for failure to state a claim. As the Supreme Court noted in *S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), the Fifth Amendment "proscribes only *compelled* self-incrimination, and, whatever may be the pressures exerted upon the person to whom a subpoena is directed, the subpoena surely does not 'compel' anyone else to be a witness against himself" (emphasis in original). In sum, a subpoena directed to Orleans prison officials did not compel Webb to incriminate himself and, therefore, did not violate his rights under the Fifth Amendment.

### C. *Eighth Amendment*

Neither can Webb's complaint about the dissemination of his prison medical records support a claim under the Eighth Amendment since that part of the Constitution serves to protect against cruel and unusual punishments *after* conviction. *See Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *see also Graham v. Connor,* 490 U.S. 386, 395 & n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Webb's medical records were sought and produced before trial. Further, their production did not in any way constitute "punishment." The court, therefore, dismisses plaintiff's Eighth Amendment claim.

### D. *Fourteenth Amendment*

#### 1. *The Right to Privacy*

This leaves Webb's Fourteenth Amendment challenge to defendant's dissemina-tion of his medical records, which this court interprets as an invocation of the right to privacy. Of course, neither the Fourteenth Amendment nor any other section of the Constitution expressly mentions a federal right to privacy. Nevertheless, in his famous dissent in *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928), Justice Brandeis characterized "the right to be let alone" as "the right most valued by civilized men." *See also* Samuel D. Warren & Louis D. Brandeis, "The Right to Privacy," 4 Harv. L.Rev. 193 (1890). In the years since *Olmstead,* the Supreme Court has, in a variety of contexts, ruled that a right to privacy implicit in the concept of ordered liberty could be derived from the Fourteenth Amendment or the "penumbra" of other constitutional rights. *See Whalen v. Roe,* 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (and cases cited therein, discussing evolution of the right to privacy). In the main these cases have focused on two broad interests: (1) "the individual interest in avoiding disclosure of personal matters," and (2) "the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. 869. The first is sometimes characterized as a "right to 'confidentiality' " to distinguish it from the second, which is frequently referred to as "the right to autonomy." *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994).

The precise contours of a constitutional right to privacy are not clearly established. Indeed, in *Whalen v. Roe,* a case involving a person's right to maintain the confidentiality of prescription drug use, the Supreme Court made plain that the right to privacy is not absolute. Rather, its very existence in a particular case depends on a balancing of the severity of any privacy invasion against the state interest in disclosure. Following this approach, the *Whalen* Court ruled that New York State's program for maintaining computer files identifying persons using certain prescrip-

tion drugs did not "pose a sufficiently grievous threat" to plaintiff's interest in the confidentiality of his medical treatment when compared to the state's legitimate concern with minimizing the abuse of controlled substances. *Id.* at 600, 97 S.Ct. 869. Indeed, the court noted that a person seeking health care often faces "a host of . . . unpleasant invasions of privacy." *Id.* at 602, 97 S.Ct. 869.

Although the Supreme Court in *Whalen* rejected the particular privacy interest in medical information asserted in that case, seventeen years later, the Second Circuit would rely on its recognition of an "interest in avoiding disclosure of personal matters," *id.* at 599, 97 S.Ct. 869, to uphold the privacy claim of a person who sued the City of New York for unnecessarily disclosing in a press release the fact that he was infected with the HIV virus. *See Doe v. City of New York*, 15 F.3d at 267.[6] In *Doe*, the Court gave great weight to a person's interest in maintaining the confidentiality of a "serious medical condition" such as HIV since disclosure could expose the person to "discrimination and intolerance." *Id.* It ruled that only a "substantial" state interest could outweigh the individual's interest in the confidentiality of such a condition. *Id.* at 269. The court did not itself decide whether such a state interest was present in Doe's case. *Id.* ("still to be resolved is whether the City had a substantial interest in issuing the press release . . . that outweighs Doe's privacy interest"). It ruled only that the pleaded facts did not support a finding as a matter of law that Doe had waived any

right to confidentiality by signing the settlement agreement. *Id.* at 268–69.

Last year, the Second Circuit considered the applicability of *Doe* to medical information maintained in a different context: a state prison. *See Powell v. Schriver*, 175 F.3d 107 (2d Cir.1999). In *Powell*, a transsexual inmate claimed that prison guards needlessly discussed her sex-change operation as well as her HIV status in the presence of other guards and inmates. The Court of Appeals first considered whether prison inmates could even assert expectations of privacy. It concluded that inmates do maintain rights to the extent that they are not "inconsistent with [their] status as . . . prisoners or with the legitimate penological objectives of the corrections system." *Id.* at 112 (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (quotation marks omitted)). Turning to the inmates "interest in the privacy of medical information," the court ruled that this "will vary with the condition." *Id.* at 111. It held that transsexualism, no less than HIV infection, was entitled to constitutional confidentiality because it was the sort of "unusual condition that is likely to provoke both an intense desire to preserve medical confidentiality, as well as hostility and intolerance from others." *Id.* Finally, the court found no cognizable state interest in disclosure to balance against the inmate's interest in confidentiality. The guards' remarks were dismissed as nothing more than "gratuitous" attempts at tasteless humor or idle gossip. *Id.*[7]

---

6. In a complaint filed with the City's Commission on Human Rights, Doe had charged Delta Airlines with discriminating against him in employment because "he was a single gay male and because of Delta's suspicion that Doe was HIV seropositive." *Id.* at 265. The Commission helped the parties settle their dispute on terms favorable to Doe. Thereafter, the Commission issued a press released disclosing the terms of the parties agreement, but not mentioning Doe by name. *Id.* In his federal complaint, Doe alleged that the press release nevertheless contained sufficiently specific information about him and his HIV

status that he was easily identified by coworkers, thereby causing him considerable embarrassment. *Id.*

7. In *Powell*, the Second Circuit did note Judge Posner's opinion in *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir.1995), holding that a prisoner's privacy rights were not violated when prison officials took steps, even informal ones, to warn others that the inmate had a contagious condition, specifically HIV. 175 F.3d at 113. It emphasized that no such justification had been posited by the *Powell* defendants. *Id.*

■ Despite its finding that plaintiff had stated a viable privacy interest, the court in *Powell* nevertheless dismissed the Fourteenth Amendment claim on grounds of qualified immunity. As is well recognized, the doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir.1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The three factors relevant to determining whether a particular legal principle was "clearly established" at the time of defendants' alleged misconduct are (1) "whether the right was defined with reasonable specificity"; (2) "whether the decisional law of the Supreme Court and the applicable circuit court supports its existence"; and (3) "whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." *Id.* at 476; *accord Powell v. Schriver,* 175 F.3d at 113.

In *Powell,* the court found that in 1991, when the challenged disclosures occurred, the right of a prison inmate to maintain the confidentiality of her HIV status and transsexualism was not clearly established. *Id.* at 114. Indeed, the court identified its 1994 decision in *Doe v. City of New York,* 15 F.3d 264, as the circuit's "controlling precedent" for the right of a non-prisoner to maintain the confidentiality of serious medical information.[8] Moreover, it was not until the 1999 decision in *Powell* itself that the issue of the applicability of that right to prison inmates was clarified in the Second Circuit. *See Gill v. DeFrank,* No. 98–CV–7851 (NRB), 2000 WL 877012, 2000 U.S. Dist. LEXIS 9122 (S.D.N.Y. June 30, 2000) (granting defendants qualified immu-

nity on grounds that plaintiff-inmate's privacy challenge to state's disclosure of his HIV status was not a clearly established right before the Circuit's decision in *Powell v. Schriver*); *see also Anderson v. Romero,* 72 F.3d at 524 (finding prison guards shielded by qualified immunity from inmate's claim that disclosure of HIV status violated right to privacy).

■ After carefully reviewing Webb's complaint in light of these privacy cases, this court is persuaded that plaintiff's Fourteenth Amendment claim must be dismissed. Preliminarily, the court notes that Webb has not alleged that his prison records contained the sort of sensitive medical information at issue in *Doe* or *Powell. See Powell v. Schriver,* 175 F.3d at 111 ("interest in the privacy of medical information will vary with the condition"); *Khalfani v. Secretary, Dep't of Veterans Affairs,* No. 94–CV–5270 (JG), 1999 WL 138247, *6, 1999 U.S. Dist. LEXIS 2791, *17 (E.D.N.Y. Mar. 10, 1999) (distinguishing between "deeply personal" medical records, which are protected by the right to privacy, and "mundane" medical information, which is not). He states only that his records contained mental health information and the fact that he was tested for HIV. But nowhere does he indicate that his mental condition has ever been diagnosed as less than normal. Neither does he assert that he has ever tested positive for the HIV virus.

The court recognizes that Webb does have various genital conditions for which he has been treated over the years. Assuming arguendo that these facts, among others, could be pleaded to state a serious medical condition, plaintiff's interest in maintaining their confidentiality would still have to be weighed against that of the state in disclosure. *See Whalen v. Roe,* 429 U.S. 598–600, 97 S.Ct. 869; *Powell v. Schriver,* 175 F.3d at 112–13; *Doe v. City*

---

8. The court did note that in *Doe v. Marsh,* 105 F.3d 106, 110 (2d Cir.1997), another case in which it dismissed a privacy claim on qualified immunity grounds, it "assumed without

deciding" that a non-prisoner's right to maintain the confidentiality of HIV status existed in September 1992. *See Powell v. Schriver,* 175 F.3d at 114 n. 4.

*of New York,* 15 F.3d at 269–70; *see also Troy v. Kuhlmann,* No. 96–CV–7190 (BSJ), 1999 WL 825622, *7, 1999 U.S. Dist. LEXIS 16027, *21–22 (S.D.N.Y. Oct. 15, 1999) (holding that distribution of prisoner medical excuse forms did not violate right to privacy because prison had legitimate interest in protecting both the institution from false excuse claims and prisoner from assignments that were beyond his capabilities).

In this case defendants had a strong public interest in seeking and disclosing Webb's prison medical records among themselves.[9] Plaintiff's genital conditions made him a prime suspect in a series of rapes being investigated in Brooklyn. The defendant parole officers provided copies of his medical records to the police in order to determine if Webb was in fact involved in ongoing criminal activity. This was entirely consistent with the officers' duty to supervise plaintiff to ensure that he was making a lawful reentry into society. After Webb was formally arrested and charged with the serial rapes, the defendant prosecutors subpoenaed Webb's original prison records so that they could be used as identifying evidence at trial. The defendant prison officials then transmitted the records in order to assist in the prosecution of an indicted case. Plainly, there is a substantial state interest in securing evidence that will prove a person's commission of felony crimes.

Apparently, both the prosecutors who issued the subpoena for Webb's records and the prison officials who responded to it failed to comply with state requirements that subpoenaed materials be transmitted in the first instance to the trial court. The prosecutor may also have been under some obligation to give notice of the subpoena to the defense. To the extent these obligations derive from state law, relief for violations would also have to come from state law. The alleged omissions do not detract from the single fact critical to this court's consideration of Webb's Fourteenth Amendment privacy claim, namely, that defendants' actions with respect to state prison records were all undertaken for the legitimate and substantial state purpose of proving Webb's identity as the perpetrator of a number of violent crimes.

In sum, this case is not at all akin to *Powell v. Schriver,* 175 F.3d 107, where the state had absolutely no interest in gratuitous employee gossip about an inmate's serious medical condition. It is not even analogous to *Doe v. City of New York,* 15 F.3d at 264, where it was unclear whether the City's legal obligation to disclose the Human Rights Commission's settlement of an employment discrimination case necessarily required it to reveal specific facts such as plaintiff's HIV status. Further, it is distinguishable from *Schwenk v. Kavanaugh,* 4 F.Supp.2d 110, 114 (N.D.N.Y.1998), a case cited by Webb but not binding on this court, in which prosecutors subpoenaed a defendant's private hospital records as part of a general "fishing expedition," without any articulable reason for thinking they contained admissible evidence.[10] In this case, defendants sought or disclosed information in Webb's prison medical records because they had reason to think that this former

---

9. Nothing in the record suggests that Webb's medical records were ever circulated beyond the narrow group of people directly involved in his criminal case.

10. The *Schwenk* opinion, cited here and by the plaintiff in his opposition papers, is a reported memorandum-decision and order of Magistrate Judge Hurd awarding damages in an otherwise unpublished case. *See Schwenk v. Kavanaugh,* 4 F.Supp.2d 110 (*citing Schwenk v. Kavanaugh,* No. 94–CV–773 (FJS), 1996 U.S. Dist. LEXIS 21944 (N.D.N.Y. Aug.

8, 1996) (adopting *Schwenk v. Kavanaugh,* No. 94–CV–773 (DNH), 1995 U.S.Dist. LEXIS 21901 Report–Recommendation (N.D.N.Y. Oct 11, 1995))). In *Schwenk,* as in this case, the subpoenaed records were never used at trial. Accordingly, the court awarded nominal damages of $1.00 for the privacy violation. Even if Webb could survive dismissal of his Fourteenth Amendment claim, it is difficult to imagine that he could prove any greater damages.

inmate had specific physical conditions that could identify him as the perpetrator of a series of rapes. This court is convinced as a matter of law that under these circumstances the public interest in disclosure of the information to police and prosecuting authorities outweighs the former inmate's interest in confidentiality. The court finds that plaintiff's complaint fails to state a claim under the Fourteenth Amendment right to privacy.

## 2. Qualified Immunity

■ Even if this court were of the opposite view, i.e., that Webb's privacy interest in his prison medical records outweighs the defendants' interest in identifying and prosecuting a serial rapist, it would still have to dismiss the claim on grounds of qualified immunity since no right to privacy under these circumstances was so "clearly established" in 1995 that defendants should reasonably have understood that their conduct was in violation of the United States Constitution. *Rodriguez v. Phillips* 66 F.3d at 476; *accord Powell v. Schriver,* 175 F.3d at 114. As previously stated, the 1994 Court of Appeals decision in *Doe v. City of New York,* 15 F.3d 264, only recognized a privacy right in *private* medical records. No such privacy right was recognized in *prison* medical records until the 1999 decision in *Powell,* long after the events here at issue. Furthermore, in *Powell* there was no legitimate state interest in the challenged disclosures. This court is unaware of any case that has yet held that a former inmate's privacy interest in his prison medical records outweighs the state's legitimate interest in determining whether that indi-

vidual is continuing to perpetrate violent felony crimes.[11]

The court hereby dismisses plaintiff's Fourteenth Amendment privacy claim (1) because it fails to state a claim, and (2) because defendants challenged actions are shielded by qualified immunity.

## IV. Claim Against Dr. Avellini

■ Webb sues Dr. James Raymond Avellini for injuries sustained during a court-ordered medical examination of his genital area. Specifically, Webb asserts that in the course of the examination, Dr. Avellini advised him that prior surgery on his testicles exposed him to a greater risk of cancer. The doctor then proceeded to conduct a manual examination for any indications of tumors, which examination purportedly reversed the beneficial effects of the earlier surgery and caused Webb considerable pain from which he continues to suffer. Webb faults Dr. Avellini for "unnecessary negligence" in the way he conducted this examination. *See* Complaint at p. 10.

■ The Eighth Amendment prohibition of cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause have been interpreted to prohibit state actors from showing a deliberate indifference to a prisoner's serious medical condition, thereby causing him to endure "unnecessary and wanton" pain. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (discussing Eighth Amendment prohibition on cruel and unusual punishment of convicted prisoners); *Weyant v. Okst.* 101 F.3d 845, 856 (2d Cir.1996) (finding pre-trial detainees to be entitled to the same protections under

---

11. As already noted, defendants in Webb's case were not engaged in the sort of general "fishing expedition" criticized in *Schwenk v. Kavanaugh,* 4 F.Supp.2d at 114. In any event, that case is of little assistance to Webb since (1) the district court did not expressly find a privacy act violation until 1996, *see Schwenck v. Kavanaugh,* No. 94–CV–773 (FJS), 1996 U.S.Dist.LEXIS 21944 (N.D.N.Y.

Aug. 8, 1996); (2) no *published* decision appeared in that case until 1998, *see Schwenk v. Kavanaugh,* 4 F.Supp.2d 110; and (3) in any event, the Second Circuit has ruled that district court decisions cannot clearly establish a constitutional right, *see Jermosen v. Smith,* 945 F.2d 547, 551 (2d Cir.1991); *see also Anderson v. Romero,* 72 F.3d at 525.

the Due Process Clause).[12] As these cases also make plain, however, "mere negligence" does not state a constitutional claim. *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. 285; *Weyant v. Okst.* 101 F.3d at 856. A prisoner must allege facts or omissions sufficient "to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. 285.

 The pleadings in this case do not evidence deliberate indifference by Dr. Avellini to Webb's medical condition. To the contrary, Dr. Avellini plainly recognized that Webb's prior surgery increased his risk of contracting testicular cancer. The doctor's challenged actions were undertaken to ensure that no evidence of tumor growth was present. If, as Webb asserts, Dr. Avellini failed to conduct the examination with a reasonable degree of medical care and thereby caused him to sustain damages, plaintiff may well have a state action for malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*

The court hereby dismisses plaintiff's § 1983 claim against Dr. Avellini.

### Conclusion

For the reasons stated in this memorandum, the court hereby dismisses all of plaintiff's federal claims against defendants Goldstein, Schwartz, Jaus, Bruffee, Barall, Hynes, Johnson, Gibbs, Avellini, Mack, and McCartney. To the extent these claims implicate the validity of Webb's prior conviction, the dismissal is without prejudice to refile if plaintiff should ever succeed in having his conviction reversed, vacated, or expunged. To the extent the claims challenge defendants' request for or disclosure of Webb's prison

medical records, the claim is dismissed with prejudice.

The Clerk of the Court is directed to transfer the remaining claims as follows: (1) plaintiff's federal and state claims against any members of the medical staff of the Sullivan Correctional Facility are hereby transferred to the Southern District of New York, where they are properly venued; (2) plaintiff's state law claims against all other named defendants, as well as any unnamed assistant district attorneys. Correction employees and parole officials, are to be transferred to the New York Supreme Court for Kings County. The Clerk is then to mark the full case closed.

*SO ORDERED.*

---

**12.** Although plaintiff also cites the Fourth and Fifth Amendments in his complaint, it seems this is because plaintiff thinks the state court erred in even ordering his physical examination. As already noted, this claim cannot be entertained by this court because it implicates the viability of Webb's criminal conviction. *See Heck v. Humphrey,* 512 U.S. at 487, 114 S.Ct. 2364.