**Roberto RODRIGUEZ, Plaintiff,**

v.

**Michael AMES, et al., Defendants.**

**No. 99–CV–6665L.**

United States District Court, W.D. New York.

Sept. 5, 2003.

Roberto Rodriguez, c/o Lizbeth M. Rodrigue, pro se, Brooklyn, NY, for Plaintiff.

Emil J. Bove, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

The plaintiff, Roberto Rodriguez ("plaintiff"), an inmate incarcerated with the New York State Department of Correctional Services ("DOCS"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983, claiming, *inter alia*, that defendant Dr. Joseph Tan violated his constitutional right to privacy when he conducted an examination of plaintiff in his cell in the presence of his cellmate. Dkt. # 1 at 11. Plaintiff seeks $750,000.00 and injunctive relief for what he describes as his "degrad[ation] and extreme humiliation." Dkt. # 1 at 10–11.

Plaintiff's privacy claim is the only remaining claim against defendant Dr. Tan. This Court previously granted summary judgment on plaintiff's Eighth Amendment claim against Dr. Tan based on Dr. Tan's medical treatment of plaintiff's condition.[1] Dkt. # 187. At that time, the Court did not rule on the privacy claim because Dr. Tan failed to address it in his motion papers. Instead, the Court gave Dr. Tan additional time to submit a separate motion addressing this claim. Dkt. # 187 at 8. Having so moved, this Court now grants Dr. Tan's second motion for summary judgment and dismisses the remaining claim against him.

## FACTUAL BACKGROUND

I will construe the facts as plaintiff presents them. Dr. Tan performed an in-cell examination of plaintiff on August 19, 1998, in response to plaintiff's request to receive testing for a bowel condition and an x-ray of his left shoulder. Dkt. # 1 at 10. In the exam, Dr. Tan asked plaintiff to turn around, drop his pants and shorts, and spread his buttocks so that he could visually examine plaintiff's anal area. Dkt. # 16 at 18. Plaintiff objected to the exam taking place in his cell. According to plaintiff, Dr. Tan told him that if he did not comply, he would note in plaintiff's medical record that plaintiff had refused treatment. Plaintiff complied with Dr. Tan's request because he was concerned about his medical condition and did not wish to have a "refusal of treatment" notation in his record. Dr. Tan then performed a brief visual examination of plaintiff's anal area in his cell. Dkt. # 1 at 10. Plaintiff's male cellmate and a male nurse identified only as J. Wymer were present at the time of the exam. Defendant's Second Response to

---

1. In addition, this Court had previously dismissed that portion of plaintiff's claim that alleged that Dr. Tan disclosed his medical condition to others, on the grounds that it did not constitute a cognizable Eighth Amendment claim. Dkt. # 3 at 8.

Plaintiff Request for Documents, Dkt. # 69, Ex. I.[2] A week later, plaintiff underwent an anoscope[3] examination in the S-Block medical examination room. Plaintiff was then referred to a gastro-intestinal consultant, Dr. James Piscatelli, who performed a colonoscopy of plaintiff's colon. Plaintiff was diagnosed with proctitis, a nontoxic inflammation of the mucose tissue of the rectum, and internal hemorrhoids. Dkt. # 138, Exs. B and E; Dkt. # 80 at ¶ 9.

Dr. Tan denies that the exam, as described by plaintiff, occurred at all. Dkt. # 36 at 1; Dkt. # 125 at 1; Dkt. # 144 at 1. According to Dr. Tan, plaintiff scheduled an appointment with him but refused to be seen on the day in question. Dkt. # 180 at 1. Nurse Wymer, however, did recall an examination of plaintiff by Dr. Tan in plaintiff's cell on the date in question. Wymer submitted a Medical Investigation Sheet relative to a grievance filed by plaintiff. Dkt. # 69, Ex. I. According to Wymer, Tan discussed the issue of rectal bleeding with plaintiff and did a visual examination of the rectal area to determine whether there were hemorrhoids or other problems in order to plan appropriate treatment. Because there were no external abnormalities noted on the visual exam, plaintiff was scheduled for an anoscope a few days later. *Id.*

Although Dr. Tan denies that the questioned examination took place, I will construe the facts as plaintiff presents them, in the light most favorable to the plaintiff, as I must, on a motion for summary judgment.

On the day of the in-cell exam, plaintiff filed a grievance with DOCS. The principal basis for the complaint was the delay in providing plaintiff with the necessary treatment. In that grievance, plaintiff did object to the in-cell exam claiming that Dr. Tan should have examined him in a medical examination room or the infirmary, instead of in his cell. Dkt. # 69, Ex. I. Both the Superintendent of Collins Correctional Facility and the Central Office Review Committee (CORC) denied plaintiff's grievance. *Id.* The Superintendent investigated the grievance and found that Dr. Tan discussed plaintiff's health complaint with him in his cell and then examined plaintiff's rectal area in order to plan an appropriate treatment. *Id.* According to the Superintendent, prison policy provides that medical examinations of inmates may be conducted in the cell or in a medical examination room, as the Facility Health Services Director sees fit. Therefore, the Superintendent found that the in-cell exam "was properly done." *Id.* CORC upheld the Superintendent's decision. CORC found that plaintiff should express any privacy concerns with the examination process with his health care provider, and that the provider is in the best position to address those concerns and determine where the exam should take place. *Id.*

## DISCUSSION

### 1. Plaintiff's 56(f) motion for further discovery

█ Before addressing the merits of Dr. Tan's motion for summary judgment, I must address plaintiff's request for further discovery. In opposition to Dr. Tan's

---

2. Exhibit I contains numerous pages, not separately paginated which relate to the many grievances filed by plaintiff during his stay at the facility. In one such grievance, plaintiff refers to Wymer using the male pronoun "him."

3. An anoscope is a short speculum used to examine the anal canal and lower rectum. *Stedman's Medical Dictionary* 1665 (27th ed.2000).

motion, plaintiff filed a motion seeking addition time to respond to the summary judgment motion (Dkt.# 191), served interrogatories and requests for the production of documents directed to Dr. Tan (Dkts.# 192, 196), and filed a subsequent motion, with affirmation, requesting that the Court defer ruling on the motion and reopen discovery (Dkt.# 201). United States Magistrate Judge Jonathan W. Feldman granted plaintiff's request for additional time to respond to the motion (Dkt.# 200), but denied plaintiff's request to re-open discovery on the grounds that plaintiff should instead file a Rule 56(f)[4] affidavit in connection with Dr. Tan's motion for summary judgment. Dkt. # 205. Plaintiff, however, never filed an affidavit pursuant to Rule 56(f). Nevertheless, the Court will consider under Rule 56(f) plaintiff's allegations made in the two affirmations he filed in response to Dr. Tan's motion and in support of his request for discovery. *See* Dkts. # 191, 201.

■ The Second Circuit "has established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56(f). The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v.*

*Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994) (citing *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir.1989)).

Plaintiff failed to make the necessary showing as to any of these elements. Plaintiff claims that this Court previously dismissed the privacy claim against Dr. Tan and, therefore, he never obtained the requisite discovery from him. Plaintiff points to this Court's *sua sponte* dismissal of so much of plaintiff's claim against Dr. Tan that alleged that he disclosed plaintiff's medical condition to others on the grounds that it did not constitute a cognizable Eighth Amendment claim. *See* Dkt. # 3 at 8. In fact, this Court did not dismiss plaintiff's privacy claim in its entirety, leaving alone that portion that pertained to the alleged in-cell examination. *See* Dkt. # 187 at 8 n. 2.

However, plaintiff has failed to articulate why the facts sought through discovery from Dr. Tan are reasonably expected to create a genuine issue of material fact. Dr. Tan has denied that any in-cell examination, as described by plaintiff, ever occurred. For that reason, for purposes of this motion, the Court and Dr. Tan have assumed that the facts are as plaintiff has alleged. Therefore, it is unclear to this Court what facts might exist on which further discovery is needed.[5] In addition,

---

4. Fed.R.Civ.P. 56(f) provides:
   (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

5. Although the record does not contain a written sick call policy from Collins Correctional Facility, the content of any such policy would

not reasonably be expected to create a genuine issue of material fact. Even assuming that there was a policy at Collins that examinations should be conducted only in examination rooms or the prison infirmary, Dr. Tan's violation of that policy would not amount to a constitutional violation for the reasons set forth *infra*. In fact, whether a particular prison policy exists at all or was violated is not dispositive of plaintiff's claims. *See, e.g., Alnutt v. Cleary,* 913 F.Supp. 160, 168 (W.D.N.Y.1996) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)); *West v. Keane,* No. 93 Civ. 6680,

as he articulated in opposition to plaintiff's request for additional discovery, Dr. Tan already has responded to requests for much of this information. *See* Dkt. #195 ¶¶ 9–13. The record contains much of the information plaintiff claims he needs to oppose the summary judgment motion. *See, e.g.,* Plaintiff's Request for Production of Documents at Dkt. #40 and Defendants' Responses at Dkts. ##69, 99, 100. Therefore, there is no basis on which to conclude that plaintiff is unable to present facts essential to justify his opposition to Dr. Tan's motion. *See* Fed.R.Civ.P. 56(f).

### 2. Deprivation of a Constitutional Right

■■■ Turning the merits of Dr. Tan's motion, it is axiomatic that to state a viable § 1983 claim, plaintiff must allege sufficient facts to show that Dr. Tan's actions deprived him of a right guaranteed by the

---

1997 WL 266977 (S.D.N.Y. May 19, 1997). Rather, the conduct itself needs to be analyzed in the context of the constitutional rights at issue—in this case the Eighth and Fourteenth Amendments.

6. This Court independently considered whether the plaintiff's Fourth Amendment rights were implicated. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (recognizing court's special duty to construe liberally a *pro se* plaintiff's pleadings). At first blush, this case seemed to be akin to those in which prisoners have brought § 1983 claims based on right to privacy violations that challenged the practice of random visual body cavity searches of an inmate's genital and rectal areas for contraband. In fact, Dr. Tan cites many of these cases in support of his motion. In such cases, the Fourth Amendment provides the appropriate framework with which to analyze the claims. Courts must consider whether an inmate's right to bodily privacy outweighs the prison's legitimate peneological interest in maintaining security through the searches. *See, e.g., Covino v. Patrissi,* 967 F.2d 73 (1992).

Here, however, plaintiff requested that he undergo a medical examination in connection

Constitution. *See Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Plaintiff asserts that Dr. Tan violated his right to "bodily privacy" and relies on the Eighth and Fourteenth Amendments as a source for that right. Dkt. #1 at 11.[6]

■■■ To prove an Eighth Amendment violation based on conditions of confinement, plaintiff must meet both an objective and a subjective test. First, plaintiff must show that he was subjected to conditions that constitute a "serious deprivation of basic human needs" which are the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *see also Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir. 2002). In analyzing this objective component, courts view the conditions of confine-

---

with a bowel disorder. He is not challenging that the examination took place, just that it took place in his cell in the presence of his same-sex cellmate. In addition, Dr. Tan did not conduct the examination for security reasons or to further any other peneological interest. Rather, the examination took place because plaintiff had a medical condition that needed addressing.

Under these facts, I find that the Fourth Amendment does not provide the appropriate framework to view this claim. Rather, as discussed *infra,* the gravamen of plaintiff's claim is that the conditions of his confinement that permitted a medical examination to take place in his cell violated his right to privacy and his substantive due process rights. The appropriate framework within which to analyze this claim is the Eighth and Fourteenth Amendments. That is not to say that the Fourth Amendment cases are wholly inapposite. The Fourth Amendment right to privacy cases are instructive in defining the contours of the constitutional right to privacy. *See Poe v. Leonard,* 282 F.3d 123, 137 (2d Cir.2002) (relying on Fourth Amendment right to privacy cases to analyze Fourteenth Amendment claim, despite rejecting the Fourth Amendment as an appropriate source for the privacy right at issue).

ment in light of "contemporary standards of decency." *Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir.1995); *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392. Second, plaintiff must show that the defendant acted with a "sufficiently culpable state of mind" amounting to at least deliberate indifference to the risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

Similarly, to determine whether plaintiff's Fourteenth Amendment substantive due process rights were violated, plaintiff must show that Dr. Tan's behavior was "so egregious, so outrageous, that it may fairly be said to shock the conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 848 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). As the Second Circuit recently articulated,

> The core protection provided by the Due Process Clause is protection against arbitrary government action. Thus, the 'touchstone of due process is protection of the individual against . . . the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'

*Poe,* 282 F.3d at 139 (quoting *County of Sacramento,* 523 U.S. at 845–46, 118 S.Ct. 1708).

I find that plaintiff has failed to allege sufficient facts to show a constitutional violation. Dr. Tan did not violate plaintiff's Eighth or Fourteenth Amendment rights by performing a brief examination of plaintiff in the presence of his cellmate so as to plan an appropriate course of treatment. Under these circumstances, the examination did not seriously deprive plaintiff of "a basic human need." *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392. The Eighth Amendment's right to be free from cruel and unusual punishment does not

guarantee that plaintiff will receive any and all medical care in total privacy. *See Vergara v. Vogliano,* No. 95 Civ. 4513, 1997 WL 86388, *4 (S.D.N.Y. Feb.28, 1997) (holding that plaintiff failed to state a § 1983 claim based on the Eighth Amendment when he refused to be treated medically in the presence of corrections officers on the grounds that he was "not entitled to receive medical treatment in complete privacy").

■ Clearly, prisoner's have the right to adequate medical care under the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, under the circumstances presented here, that right does not encompass the right to receive that care in a wholly private setting. Unlike food, clothing, shelter, and exercise, receiving a cursory medical examination in total privacy is not one of the "minimal civilized measure of life's necessities." *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392; *see also DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Nor does Dr. Tan's conduct in this case amount to a deliberate indifference to plaintiff's privacy interests. Even as plaintiff describes it, the exam was rather cursory, and conducted in the presence of both Dr. Tan and his male nurse. The fact that plaintiff's cellmate also was present is not sufficiently shocking or egregious as to amount to a constitutional violation. Plaintiff and his cellmate obviously spent numerous hours together in a small single cell with shared toilet facilities. It certainly is not an unusual occurrence for one inmate to observe a cellmate naked, or partially naked. What occurred here appears to be a rather minor inconvenience and embarrassment in the context of prison life full of such things. Under these circumstances, Dr. Tan's decision to per-

form the initial examination of plaintiff's bowel condition in his cell does not evince the requisite state of mind required for an Eighth Amendment violation. For these same reasons, the circumstances of the examination do not give rise to a Fourteenth Amendment violation. *See Webb v. Goldstein,* 117 F.Supp.2d 289, 298 (E.D.N.Y.2000) (plaintiff failed to state a Fourteenth Amendment claim based on right to privacy in medical condition); *but see Poe,* 282 F.3d at 139 (defendant police officer's conduct in secretly videotaping unclothed female volunteer for a police training video "shocks the conscience" and was "unjustifiable by any governmental interest").

■ Furthermore, a prisoner's interest in keeping a particular medical condition private varies with the condition. *Powell v. Schriver,* 175 F.3d 107, 111 (2d Cir.1999) (citing *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994)). This is not a case in which plaintiff has an unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence. *See id.,* 175 F.3d at 111–13 (recognizing prisoner's right to privacy in transsexuality and HIV-seropositive status); *see also Webb,* 117 F.Supp.2d at 298 (plaintiff held no Fourteenth Amendment right to privacy in medical records that contained information concerning treatment for various genital conditions on the grounds that the condition was not of the same sensitive nature as HIV or transsexualism). According to Dr. Tan, plaintiff's proctitis was not toxic (Dkt. # 80 at 3), and the record does not otherwise indicate that proctitis is a severe or unusual medical condition. Dkt. # 138 at ¶¶ 15–18 and Ex. E. Plaintiff was treated with over-the-counter anal suppositories and the condition subsided within a few weeks. *Id.*

In addition, where information about a particular condition spreads through "humor or gossip," it is more likely that the inmate's right to privacy has been violated. *Powell,* 175 F.3d at 112. Here, however, plaintiff does not allege, and the record does not indicate, that word of plaintiff's condition spread through the prison as a result of the in-cell exam or that he experienced discriminatory or violent action from other inmates. *See Leon v. Johnson,* 96 F.Supp.2d 244, 252 (W.D.N.Y.2000) (no constitutional violation of inmate's right to privacy where plaintiff failed to present evidence that the nature of his condition was disclosed to other inmates).

Nor is this is a case in which plaintiff claims his right to bodily privacy was violated by the presence of a staff member of the opposite sex. Both the physician and nurse were men, as was plaintiff's cellmate. *See Forts v. Ward,* 621 F.2d 1210, 1217 (2d Cir.1980) (recognizing inmate's limited right to bodily privacy that included freedom from involuntary viewing of private parts of the body by guards of the opposite sex); *Covino,* 967 F.2d at 78 (same); *Colman v. Vasquez,* 142 F.Supp.2d 226 (D.Conn.2001) (plaintiff sufficiently stated a claim under the Eighth Amendment challenging constitutionality of pat searches conducted by male guards of female inmates in special unit for victims of sexual abuse).

■ Instead, this case concerns an embarrassing circumstance of prison life that does not rise to the level of a constitutional violation. Prisoners do retain a limited right to bodily privacy. *See Covino,* 967 F.2d at 78. However, as with all constitutional rights, plaintiff retains that right in prison only insofar as it is consistent with his status as a prisoner. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In this regard, there are many unfortunate and embarrassing

circumstances prisoners must endure as part of their daily lives. Many prisoners, like the plaintiff here, share their cells with others and have very little privacy in certain daily activities. However, "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392).

■ Moreover, the Court is not prepared to recognize that the DOCS policy articulated by the Superintendent in response to the grievance plaintiff filed violated plaintiff's right to privacy. *See* Dkt. # 69, Ex. I. A policy that allows a cursory and non-invasive exam to take place in a prisoner's cell if the medical provider deems it appropriate is constitutional under the circumstances presented here. That policy ensures institutional safety and keeps the traffic of prisoners between cells and other locations within the prison at a minimum. Prompt examinations of inmates in their cells is often the most practical way to provide necessary treatment and to determine if in fact more extensive examinations are needed in the infirmary or outside the institution. A policy that requires all medical examinations, of every kind, to be done at the infirmary would pose an undue burden on the already strained medical resources available. DOCS's sick call prison policies recognize that inmates have certain rights to privacy and that these rights need to be balanced against safety and security measures. *See* Patient Bill of Rights # 7 (recognizing right to privacy in receipt of health care services "to the extent consistent with providing adequate medical care and the safety and good order of the facility"), and DOCS Health Care Services Policy 1.34. Dkt. # 100, Ex. A. Where a prison policy is related to maintaining prison security, def-

erence to the "expert judgment" of the corrections officials who promulgated that policy is appropriate because those officials are in the best position to judge what steps are necessary to maintain security. *Pell,* 417 U.S. at 827, 94 S.Ct. 2800; *see also Nicholas v. Miller,* 189 F.3d 191, 194 (2d Cir.1999).

Of course, that is not to say that prison doctors have the unfettered discretion to conduct whatever medical procedures or examinations they deem appropriate in any setting without constitutional implications. Perhaps better practice would have been for Dr. Tan to have examined plaintiff in a separate room. The Court is cognizant of the CORC memorandum to the Superintendent at Collins after this incident suggesting that a separate room should be considered if a medical examination requires that an inmate expose a private part of their body, and that in all instances health staff should exercise professional medical judgment in treating inmates. *See* DOCS' Memorandum dated November 4, 1998, Dkt. # 69, Ex. I. However, given the cursory nature of the examination here, the fact that plaintiff's cellmate, the doctor and the nurse were all men, that plaintiff's condition was not unusual or of a nature that led to a threat of violence or discrimination by other prisoners, no constitutional violation occurred. Therefore, plaintiff's § 1983 claim against Dr. Tan must be dismissed.

## CONCLUSION

For the foregoing reasons, Dr. Tan's motion for summary judgment (Dkt.# 188) is granted, and the complaint against Dr. Tan is dismissed with prejudice.

IT IS SO ORDERED.