Friedman, J.
Petitioner applies, by way of an article 78 proceeding, for an order directing the respondent, the department of hospitals of the City of New York, to furnish petitioner with a copy of her (petitioner’s) hospital records. These records show the diagnosis, treatment and other information pertinent to injuries which petitioner claims she sustained as the result of an accident, and for which injuries she was confined to the Kings County Hospital, a branch of the respondent, and for which injuries she has brought suit in this court against another party on the ground of negligence.
The refusal by the respondent to furnish said petitioner with information regarding said records, or an inspection- thereof, was predicated upon the said petitioner’s refusal to sign a printed assignment form, a copy of which is attached to the papers before the court. This form was prepared by respondent or its representatives, and in addition to providing therein for an assignment from the proceeds of the said petitioner’s negligence action to the respondent herein, it also made provision that an additional assignment be made from the proceeds of the same cause of action to certain physicians (unnamed) on the medical visiting staff of the said hospital. This assignment is allegedly to pay said physicians their charges for treating the petitioner while she was in the hospital. The form itself makes no statement as to the amount of such charges, or the rate at which the charges will be billed, but merely provides that such amount shall ‘‘ not exceed twice the rates set forth in the medical fee schedule established by the Workmen’s Compensation Board and that such medical and surgical services were rendered by such physician or under his personal supervision or direction.”
*209 Petitioner alleges to this court that she is willing to sign an authorization and the assignment in behalf of the hospital, for its hospital charges, but objects to the inclusion in said assignment of the additional assignment to said unnamed physician or physicians. She points out that in any event, the respondent has a lien for its charges by virtue of the provisions of section 189 of the Lien Law, and that she is willing to recognize that lien, even though it be by way of assignment. She objects, however, to giving to the said physician or physicians a lien, by way of assignment, which they otherwise do not have under existing law.
Respondent, on the other hand, contends that it need not furnish information with respect to the records in question, unless and until petitioner complies with its request, and urges as authority for its said refusal, the provisions of subdivision c of section 585 of the New York City Charter. That section provides that members of the medical staff who serve on the in-service of a hospital as part-time clinicians, shall serve without compensation, except that they may accept medical fees for services rendered by them to patients or persons who recover damages in tort actions.
Subdivision c of section 585 of the New York City Charter is merely permissive in nature. It does not give the respondent the authority to compel an assignment in behalf of such physicians, nor does it create any common-law or statutory lien in their behalf (Viviani v. Howard Johnson’s Inc., 130 N. Y. S. 2d 331; Reardon v. Spagna, 205 Misc. 196, revd. on other grounds 284 App. Div. 975). Yet, as appears on the face of the assignment, petitioner dare not make any change therein because the printed form itself specifies in larger type than the body of the assignment, and prominently underlined, the words ‘‘ ALTERATION OF THIS FORM WILL NOT BE ACCEPTED.” Since the physicians have no lien under section 189 of the Lien Law, they stand in the same position as any other claimants to whom the petitioner may be indebted for services rendered and who would be required to resort to a plenary suit to enforce their claims, if any.
The Legislature of this State, in its wisdom, has given hospitals a lien upon the proceeds of a recovery in a tort action (Lien Law, § 189). While an attempt has been made through the introduction of legislation in the Legislature, to include physicians within the benefits of such law, this proposed legislation has failed of passage, and the Legislature has turned down the suggestion that physicians have such a lien. (See 1949 N. Y. Legis. Index, Senate Intro. No. 2045, Senate Print *210 No. 2253, defeated March 29, 1949.) It was in an attempt to by-pass the Legislature’s determination in that regard, that the printed form of assignment which was originally in existence was altered, so as to include within its scope that which the Legislature refused to enact into law. Somehow or somewhere, someone conceived the ingenious thought that physicians could be preferred over other creditors, by including the provision for an assignment to them, within the body of the hospital assignment itself.
This was a very powerful and potent weapon in behalf of the physician. The patient lying on his back in the hospital, or the patient who desperately needed the information contained in those records in order to proceed with his lawsuit, was faced with the choice of signing the printed form, which could not be altered, or remaining ignorant as to the diagnosis and treatment of injuries which the hospital had made during the period of his confinement in said hospital. Without that information, the plaintiff could not secure his day in court. Rule 9 of the Rules of the Supreme Court in Kings County, and similar rules in other counties, require that a plaintiff furnish a defendant in a negligence action, with certain documents which show in detail the nature and extent of his injuries. These documents are also required to be filed in court. If the hospital remains adamant and refuses to furnish plaintiff with the information which he seeks, the plaintiff, almost at the very inception of his lawsuit, can never reach the calendar of the court and have his day in court. The hospital usually remains adamant. That appears to be what was done in this case, and that is the reason why this motion is now before the court.
It is elementary that an assignment should be a voluntary act upon the part of the assignor. If it is not, if it is made under duress or coercion, or if it is not given with full knowledge of its contents, it is void. Duress and coercion do not mean only that force or threats have been used. In a case such as this, duress and coercion may be spelled out of the refusal to furnish information, which may result in depriving a plaintiff of substantial moneys to which he may be legally entitled. This court has no right to substitute its judgment for that of the Legislature, and when the Legislature decreed, through its failure to act upon the legislation which was introduced, that a physician has no legal lien upon the proceeds of a recovery in a tort action, there the matter must end. It follows, therefore, that the refusal of the department of hospitals to furnish the information requested in the absence of the execution by the petitioner herein of an assignment to the physician, is unreasonable, *211 unwarranted and arbitrary, and constitutes an improper abuse of discretion by this department.
While on this subject, the attention of the Bar should be called to the fact that the Legislature has heretofore very wisely provided a means and a method whereby information of this kind may be secured. Even though petitioner has in this proceeding requested relief under article 78 of the Civil Practice Act, she might have otherwise proceeded. A motion could have been made in the pending negligence action, upon notice to the defendant in that action, for an order under section 288 of the Civil Practice Act, permitting said petitioner, as the plaintiff in that action, to examine the superintendent of the hospital in question, as a witness before trial, and requiring the superintendent upon such examination to produce the necessary hospital records. The respondent herein need not even be given notice of that application; and upon proof to the court in such application, by way of affidavit, to the effect that the information was necessary to enable plaintiff to put her case upon the calendar and to otherwise comply with the rules of this court, and upon further proof that respondent refused to furnish the plaintiff there with the information which was necessary to enable plaintiff to so proceed, this court would undoubtedly have made an order permitting such examination before trial. A date would be set in that order, and the first notice that the hospital would have about the proposed examination would be a receipt by it of a subpoena and a subpoena duces tecum, requiring the attendance of the superintendent of hospitals or his representative, and the production of the necessary hospital records. As a practical proposition, that would be the end of any request for an assignment. Recognizing this fact, the hospital many times demands that the indigent patient in the hospital, while still flat on his back, ‘ ‘ sign some forms, ’ ’ one of which subsequently turns out to be the assignment which is here disputed, and the result many times is that plaintiff first becomes aware of the fact that he has signed an assignment, long after he has left the hospital and sometimes shortly before his negligence action is disposed of.
Of course, a hospital served with such a subpoena always has the right to attack the validity thereof by a motion to quash. But this court cannot conceive that such a motion could possibly be successful. No witness has a right to demand that even a legitimate bill be paid or secured to him, before he testifies as a witness in any action or proceeding. Yet, that substantially is what the department of hospitals would be demanding upon such a motion. Certainly, it would be a miscarriage of justice *212 to permit a witness, who is subpoenaed into court to testify upon a trial, to state to the court that he refuses to give information within his knowledge and control, unless some provision is first made that a bill, even though it may lawfully and properly be due to him, be paid or secured. We would be shocked at any law or ruling which would so provide, and yet, every day we close our eyes to this situation and permit the department of hospitals to make such demands.
Many of the charges which are made are exorbitant, and far beyond a reasonable charge for many of these indigent persons who are supposedly in a city or free hospital. The present so-called “ ward rates ” in these free hospitals exceed, in many instances, the charges of some of the finer private hospitals within this city. Yet, the indigent patient who secures a recovery in a tort action has no alternative but to pay the amount of these charges. The physician who is fortunate enough to secure the signing of the printed form of assignment is permitted to charge “ twice ” the charges for similar services permitted by the Workmen’s Compensation Board. It enables him to charge not only for his own services, but also for the services of anyone else who renders those services under his ‘‘ personal supervision or direction.” Thus, it is conceivable that the physician may include within his bill a charge at twice the Workmen’s Compensation Board rates, for directing the nurse to give the patient an aspirin or an injection or to straighten the patient’s pillow so that the patient’s head will be a little higher than it otherwise might be. Many times a service, such as walking by the patient with the inquiry, “ How are you? ”, results in the inclusion within the bill of such a charge, because the hospital record will state, “ Visited by Dr. So-and So.” The system which has grown up is a result of loose supervision and is an unfair one to the indigent patient who is successful some day in getting a recovery, perhaps in an amount which is far less than that to which he is entitled, as a result of, in many instances, permanent and crippling injuries.
Another evil seems to have grown up through the practice of demanding the signing of this form of assignment. Ordinarily, a person who hires a lawyer is required to pay the lawyer for his services. In negligence actions, because of the necessity of providing counsel for persons who might otherwise not be able to secure legal representation, contingent retainers have become the popular and practical method for retaining such counsel. Were it not for the fact that there was a potential recovery in the impending negligence suit, neither the hospital nor the physician would ever make claim upon an *213 indigent person for the services received by him. Of course, what follows thereafter is interesting. The hospital, or the lawyer for the physician, then goes through the “ great trouble ” of sending a letter by registered mail, advising that an assignment has been executed and sometimes enclosing a copy of the assignment. Then another lawyer, the one who represents the injured party, goes through the process of commencing, preparing and prosecuting the lawsuit. It is sometime later disposed of by trial or settlement. The client pays the lawyer the amount of his contingent retainer. To his amazement, when he starts doing some mathematics, he discovers that he has paid his lawyer a fee for collecting money which never belonged to him in the first place and which must be turned over in toto, without being subject to any legal fee, to the assignee. Certainly, a strange situation. The client finds himself paying his lawyer for services which the lawyer, in effect, rendered not for the client but for the assignee-physician or the assignee-hospital. Then follows the query from the client, ‘ ‘ How come? ”, and of course, the lawyer, who is within his right in making the charge, points out the inescapable provisions of law which require the recognition of the assignment without any deduction therefrom for the lawyer’s fees which are necessarily incurred in securing payment of the amount of such assignment.
Any person who receives medical or hospital services should be ready to pay for these services, just as he is required to pay his butcher, baker, grocer or landlord. It is not the theory of payment which is at fault here, but the manner in which it has been applied. When a person owes his landlord or butcher money, he knows in advance what the amount is. But when he signs an assignment to the hospital or the physician, he very rarely knows what the amount of the claim against him is going to be and the assignment is a blanket one, which sometimes results in his being obliged to pay an amount which is inordinate in comparison with the amount which the injured person subsequently recovers.
It is the further fact that when the case is finally determined, and a verdict. is obtained or a settlement agreed upon, the amount fixed is usually a reduced amount, based upon the fact that there are disputes as to liability and the amount of injuries and damages sustained. Yet, the assignee refuses to recognize a proportionate reduction in the amount of its lien, and also refuses to recognize the fact that lawyer’s fees must be paid to collect that lien, and that except for the execution of a contract obligating the payment of such lawyer’s fees, and the *214 prosecution of the action in question, the assignee-hospital or assignee-physician would never secure any recovery at all. An example of how inequitable this situation is may be taken from the following suppositious facts.
Suppose a client hired a lawyer, arranged to pay him one third of the recovery as a contingent retainer, and then secured a recovery in the amount of $15,000, either by verdict or settlement. Included in that claim, let us further assume, was an assignment which gave the doctor $1,000 and the hospital $2,000, or a total of $3,000. When the check is finally collected, the lawyer gets $5,000, as is his right under his contract of retainer, the two assignees receive $3,000 and the client winds up with $7,000. The recovery, in effect, was not one by the client for $15,000, but was a recovery by the client for $12,000 and a recovery by the assignees of their $3,000. But under the method presently used, these assignees did not pay one third for recovering their $3,000, while the client on the other hand not only paid his one third for recovering his $12,000, or $4,000, but also paid an additional $1,000 to collect the $3,000 due to the hospital and the physician. So instead of paying one third of his actual recovery of $12,000, the client is paying $1,000 more than he should. Then, the lawyer who did nothing further than to notify the claimant’s lawyer that the physician-assignee had such an assignment, receives the full amount of the recovery and he, in turn, charges his own client for making such recovery in his behalf. The actual final result is that two lawyers charge for recovering the same amount of money, but the difference is that one lawyer, the one who did practically all of the work to effect such recovery, charges his own client for collecting money which is paid to some other person; while the other lawyer, who did no part of the work to help effectuate the recovery, gets a substantial fee from the person who actually receives the amount of the recovery. Certainly, an unjustifiable, unconscionable and unfair result.
While this opinion has gone somewhat afield from the pertinent issues on this application, the matter is being called to the attention of the Bar in the hope that something will be done, either by way of legislation or by rule, to correct the evils which have grown up.
In the particular case at bar, petitioner has stated that she is willing to sign an assignment form which omits all provisions as to the lien for the physician. Even without such consent, the court would have granted this petition to compel the respondent to permit the petitioner to inspect the hospital records, because to do otherwise would be to deny the petitioner her *215 right to present her case in court. As heretofore stated, the department of hospitals would in any event be protected by virtue of the provisions of the Lien Law.
Accordingly, the petition is granted as prayed for. Settle order on notice.