Janet GOTKIN and Paul Gotkin, Individually and on behalf of all persons similarly situated, Plaintiffs-Appellants,

v.

Alan D. MILLER, Individually and as Commissioner of Mental Hygiene of the State of New York, et al., Defendants-Appellees.

No. 477, Docket 74–2138.

United States Court of Appeals, Second Circuit.

Argued Feb. 14, 1975.

Decided April 17, 1975.

Christopher A. Hansen, Mental Health Law Project, New York City (Bruce J. Ennis, New York Civil Liberties Union and Mental Health Law Project, New York City, on the brief), for plaintiffs-appellants.

Maria L. Marcus, Asst. Atty. Gen. for the State of New York (Louis J. Lefkowitz, Atty. Gen., on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for defendants-appellees Alan D. Miller and Morton B. Wallach.

Melvyn B. Ruskin, Mineola, N. Y. (Lippe, Ruskin & Schlissel, P. C., Mineola, N. Y., on the brief, Michael L. Faltischek, Mineola, N. Y., of counsel), for defendant-appellee Charles J. Rabiner.

Robert Conrad, New York City (Goldwater & Flynn, New York City, on the brief, George Kossoy, New York City, of counsel), for defendant-appellee Marvin Lipkowitz.

Steven J. Stein, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief, Jacob Imberman, John L. Greenthal, New York City, of counsel), for Hospital Association of New York State, amicus curiae.

Before Hays and FEINBERG, Circuit Judges, and HOLDEN, District Judge.*

HAYS, Circuit Judge:

Janet Gotkin, a former mental patient, and her husband Paul brought an action in the United States District Court for the Eastern District of New York under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (1970) seeking to have Mrs. Gotkin's records at Brooklyn State Hospital, Long Island Jewish-Hillside Medical Center, and Gracie Square Hospital made available to her. Judge Travia granted summary judgment in favor of the defendants. He held that the plaintiffs had failed to demonstrate that they had a constitutional right to inspect and copy Mrs. Gotkin's records.[1] Gotkin v. Miller, 379 F.Supp. 859 (E.D.N.Y.1974). We affirm.

## I.

The facts are essentially undisputed. Between 1962 and 1970 Janet Gotkin was voluntarily hospitalized on several occasions mainly because of a series of suicide attempts. She has not received treatment since September, 1970. In April, 1973, the Gotkins contracted to write a book about Janet's experiences. In order to verify her recollections of various incidents, she wrote to three hospitals at which she had been a patient asking them to send her copies of her records. Brooklyn State Hospital and Long Island Jewish-Hillside Medical Center refused her request,[2] and Gracie Square Hospital did not respond.

The Gotkins then filed suit against the directors of the three hospitals and the New York State Commissioner of Mental Hygiene, alleging that the policies of the hospitals against granting requests such as Mrs. Gotkin's violated the rights of former mental patients under the First, Fourth, Ninth, and Fourteenth Amendments of the United States Constitution. The complaint demanded declaratory and injunctive relief in favor of the Gotkins and all others similarly situated. The court granted the defendants' motion for summary judgment. It held that Paul Gotkin was not a proper plaintiff because he was not a former mental patient and had not requested access to his or his wife's records.[3] 379 F.Supp. at 862. As to Janet Gotkin and other members of her purported class, the court held that former mental patients have no First Amendment right to receive information contained in their hospital

---

* Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

1. The directors of Long Island Jewish-Hillside Medical Center and Gracie Square Hospital, both private institutions, argue that they were entitled to summary judgment on the additional ground that their hospitals did not act under color of state law as 42 U.S.C. § 1983 requires for an action brought under that section. Although the district court did not reach this question, the recent decision in Barrett v. United Hospital, 376 F.Supp. 791 (S.D.N.Y.), aff'd on opinion below, 506 F.2d 1395 (2d Cir. 1974), strongly supports their contention. However, in view of our ultimate disposition of this case, we find it unnecessary to decide whether there was state action on the part of the private hospitals.

2. Long Island Jewish-Hillside Medical Center offered to release Mrs. Gotkin's records to her physician, but no request for such a release was made. Mrs. Gotkin did not attempt to obtain her records from the other hospitals through her physician, although the hospitals claim that their policy is to release records to a physician designated by the patient. The hospitals explain that they prefer to release records to a designated physician rather than to the patient himself because 1) medical records are often unintelligible to the layman, 2) the revelation of certain information could be detrimental to the individual's current well-being, and 3) the records often contain references to other individuals who might be harmed by disclosure. See New York State Department of Mental Hygiene, Department Policy Manual § 2932 (1974). The designated physician is expected to withhold material which might be harmful to the patient or third parties. Cf. Part IV, infra.

3. Appellants do not seriously dispute this part of the district court's holding.

records,[4] 379 F.Supp. at 862–63; that the Fourth Amendment prohibition of unreasonable searches and seizures is inapplicable, id. 379 F.Supp. at 863; that plaintiffs enjoy no right of privacy entitling them to their records for purposes of publishing a book, id.; and that plaintiffs had not been deprived of "liberty" or "property" protected by the due process clause of the Fourteenth Amendment, id. 379 F.Supp. at 864–68.

## II.

■ Appellants' main argument on this appeal is that the refusal by the hospitals to allow former mental patients to inspect their records deprives the patients of property without due process of law. We can find no basis for the proposition that mental patients have a constitutionally protected property interest in the direct and unrestricted access to their records which the appellants demand.

■ In Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that the Fourteenth Amendment is not an independent source of property rights. Id. 408 U.S. at 577, 92 S.Ct. 2709. The due process clause protects only those property interests already acquired as a result of "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

■ In an attempt to satisfy the *Roth* criteria, appellants argue that under New York case law, patients have a property interest in their hospital records.[5] However, none of the cases cited by appellants indicates that patients have a right to unrestricted access to their records. The majority of the cited cases hold simply that under the discovery provisions of New York law, patients are entitled to a court order granting them access to their records for purposes of litigation. See Application of Weiss, 208 Misc. 1010, 147 N.Y.S.2d 455 (Sup.Ct.1955); In re Greenberg's Estate, 196 Misc. 809, 89 N.Y.S.2d 807 (Sup. Ct.1949); Hoyt v. Cornwall Hospital, 169 Misc. 361, 6 N.Y.S.2d 1014 (Sup.Ct.1938); Application of Warrington, 105 N.Y.S.2d 925 (Ct.Cl.1950) (mem.); Thomas v. State, 197 Misc. 288, 94 N.Y.S.2d 770 (Ct. Cl.1950).

Appellants argue that these cases must be interpreted as establishing a general property right because in several instances courts ordered the hospitals to produce records even though no action had yet been filed. See, e. g., Application of Weiss, supra; In re Greenberg's Estate, supra. However, appellants fail to note that under New York law, discovery may be ordered by a court even before an action is commenced. N.Y.C. P.L.R. § 3102(c) (McKinney 1970) (previously N.Y.C.P.A. § 295). The court orders in *Weiss, Greenberg,* and *Hoyt* were explicitly founded on that provision.

---

4. On appeal, appellants no longer cite the First Amendment as a basis for their action.

5. While relying primarily on New York law, appellants also cite United States ex rel. TVA v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943) and United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) for the proposition that the definition of property in the Fourteenth Amendment is a federal question and that state law is only one source to be consulted for guidance. They go on to cite several decisions from jurisdictions other than New York, which purportedly grant patients a property interest in their records. However, *Powelson* and *Causby* both make it clear that the definition of property "will normally obtain its content by reference to local law," in this case the law of New York. See 328 U.S. at 266, 66 S.Ct. at 1068; 319 U.S. at 279, 63 S.Ct. 1047. Furthermore, as the Court said in *Roth* and in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), only a legitimate claim of entitlement is protected by the due process clause. See 408 U.S. at 577, 92 S.Ct. 2701. Such a claim may be based on the applicable state law or on understandings or agreements between the parties. See 408 U.S. at 601–02, 92 S.Ct. 2694. No claim of entitlement to the property sought in this case may be based on isolated decisions from other jurisdictions. Finally, to the extent that it is relevant, the overwhelming majority of states do not permit patients to have free access to their medical records. See 379 F.Supp. at 866, n.8.

Appellants claim that other New York cases grant patients access to their records regardless of pending or proposed litigation. In Sosa v. Lincoln Hospital, 190 Misc. 448, 74 N.Y.S.2d 184 (Sup.Ct.1947) the court did allow access while discounting the possibility of litigation. However, the decision was based on a New York City Charter provision, not applicable here, which granted all taxpayers free access to city records. In Glazer v. Department of Hospitals, 2 Misc.2d 207, 155 N.Y.S.2d 414 (Sup.Ct. 1956), the court ordered records produced under Article 78 of the Civil Practice Act (now N.Y.C.P.L.R. § 7801 et seq. (McKinney 1963)) rather than under the discovery provisions. However, the plaintiff claimed that she needed her records for purposes of a suit she had brought, and the court based its decision on the arbitrariness of the hospital's policy of refusing to release records to patients involved in litigation unless they assigned the proceeds of their actions to the hospital and to certain unnamed physicians. See 155 N.Y.S.2d at 417.

▅ The only New York decision cited by the parties which deals directly with the question of whether a patient has a property interest in his records is In re Culbertson's Will, 57 Misc.2d 391, 292 N.Y.S.2d 806 (Surr.Ct.1968). In that case the court held that the records were the property of the physician but that a provision in a doctor's will calling for the destruction of his records would not be enforced because it violated public policy. *Culbertson* is consistent with the cases cited by the appellants. All of them indicate that patients have certain rights in their records short of the absolute property right to unrestricted access which the appellants are claiming here.

▅ New York statutory law also establishes that while patients may exercise a considerable degree of control over their records, they do not have the right to demand direct access to them. Under § 15.13 of the Mental Hygiene Law (McKinney's Consol.Laws, c. 27, Supp. 1974), records may not be released to third parties without the consent of the patient, except in certain enumerated situations. Section 17 of the Public Health Law (McKinney's Consol.Laws, c. 45, Supp.1974) provides for the release of medical records to a hospital or physician designated by the patient. These sections indicate the existence of substantial limitations on the right of access claimed by appellants.[6] We therefore hold that the Fourteenth Amendment does not support appellants' claim that former mental patients have a constitutionally protected, unrestricted property right directly to inspect and copy their hospital records.

### III.

Appellants also argue that the hospitals' policy violates the Fourteenth Amendment because it deprives former mental patients of liberty without due process of law. They claim that since the policy against unrestricted disclosure is in part based on the fear that such disclosure could have an adverse effect on the patient, see note 2 supra, the refusal by the hospitals to grant Mrs. Gotkin access to her records stigmatizes her as mentally ill, although she is now sane and competent.

---

**6.** Appellants argue that although the statutes do not grant them the rights they are seeking, they do grant patients some degree of property interest in their records. Appellants claim that the state is therefore constrained to grant them the other "traditional incidences of property rights" which the statutes withhold. However, appellants cite no authority for this limitation on the states' power, and we find it contrary to the *Roth* holding that the Constitution protects only those property rights already acquired under state law. See 408 U.S. at 576, 92 S.Ct. 2701. The appellants' citation

of Arnett v. Kennedy, 416 U.S. 134, 211, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Marshall, J., dissenting) is completely inapposite. A majority of the Justices apparently agreed in that case that in creating a statutory property interest, the state could not limit the due process safeguards applicable to that interest. Nowhere did the Justices indicate that by granting a partial property interest, the state was somehow obliged to grant all the "traditional incidences of property rights," as appellants contend.

 We agree that the due process clause applies not only when one's physical liberty is threatened but also "[w]here a person's good name, reputation, honor, or integrity is at stake." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), quoted in Board of Regents of State Colleges v. Roth, supra 408 U.S. at 573, 92 S.Ct. 2701. However, the contention that Mrs. Gotkin is being stigmatized by the hospitals is without merit. No one has branded her as mentally ill or otherwise incompetent. Compare Wisconsin v. Constantineau, supra 400 U.S. at 437, 91 S.Ct. 507; Lombard v. Board of Education, 502 F.2d 631, 637 (2d Cir. 1974). Mrs. Gotkin has no valid claim of deprivation of liberty under the Fourteenth Amendment.

 Nor do we find merit in appellants' contention that the hospitals' refusal to disclose Mrs. Gotkin's records violated her right to privacy and control over her own body. This is not a case such as Canterbury v. Spence, 150 U.S. App.D.C. 263, 464 F.2d 772, cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972), cited by appellants, in which a physician allegedly failed to disclose the risks which were involved in the course of treatment which he had prescribed. Mrs. Gotkin is not undergoing or contemplating treatment. She alleges that she wants the records to help her in the publication of her book, not to evaluate her medical condition. No serious interest in privacy or control over one's body is at issue.

 We also find no merit in the argument that the Fourth Amendment guarantee against unreasonable searches and seizures is relevant to this case. See 379 F.Supp. at 863.

## IV.

 Finally, appellants argue that summary judgment should not have been granted because material issues of fact are still at issue. They contest the claims of the hospitals that patients may obtain access to their records through a designated physician. Appellants also argue that even if such a policy is followed, it is not needed to protect patients or third parties, as the hospitals contend.

We agree with the district court that the defendants were entitled to summary judgment regardless of the outcome of these factual disputes. See 379 F.Supp. at 868–69. Plaintiffs in this action sought nothing short of unrestricted, direct access to Mrs. Gotkin's records. See note 2 supra. They failed to establish a constitutional basis for this claim, and it was therefore unnecessary for the district court to judge the wisdom of the hospitals' screening procedures or to decide if those procedures were properly administered.

Affirmed.