NATIONAL ASSOCIATION OF LET-
TER CARRIERS, AFL–CIO, and
American Postal Workers Union,
AFL–CIO, Plaintiffs,

v.

UNITED STATES POSTAL SERVICE
and United States Postal Service Of-
fice of Inspector General, Defendants.

No. 08 Civ. 458 (DC).

United States District Court,
S.D. New York.

March 30, 2009.

Cohen, Weiss and Simon LLP, by Bruce H. Simon, Esq., Peter D. DeChiara, Esq., Claire Tuck, Esq., New York, NY, for Plaintiff National Association of Letter Carriers, AFL–CIO.

O'Donnell, Schwartz & Anderson, PC, by Darryl J. Anderson, Esq., Washington, DC, Spivak Liption LLP, by Adrienee L. Saldana, Esq., New York, NY, for Plaintiff American Postal Workers Union, AFL–CIO.

Lev L. Dassin, Acting United States Attorney for the Southern District of New York by Lara K. Eshkenazi, Esq., Assistant United States Attorney, New York, NY, for Defendants.

*OPINION*

CHIN, District Judge.

In this case, two labor unions representing postal employees allege that the United States Postal Service (the "USPS") and its Office of Inspector General ("OIG") have instituted an unlawful policy of obtaining employees' personal medical information from health care providers without the employees' knowledge or consent. The unions allege that the policy is unlawful and unconstitutional and request that the Court enjoin the USPS from continuing the practice. The USPS moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the unions do not have associational standing to bring this suit. Alternatively, the USPS moves to dismiss the first count of plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, the motion to dismiss is denied, in both respects.

## BACKGROUND

### A. *The Parties*

Plaintiff National Association of Letter Carriers, AFL–CIO ("NALC"), is a labor union and association of active and retired postal employees. (Compl. ¶ 11). It is the exclusive collective bargaining representative for more than 200,000 "city letter carriers" employed by USPS. (*Id.*).

Plaintiff American Postal Workers Union, AFL–CIO ("APWU"), is a labor union and association of postal employees. (*Id.* ¶ 12). APWU represents more than 260,000 USPS employees who work in Clerk, Maintenance, and Motor Vehicle Services. (*Id.*).

The USPS is an independent establishment of the executive branch of the government of the United States. (*Id.* ¶ 9). OIG is an independent agency within, and part of, USPS. (*Id.* ¶ 10). OIG was created and is governed by the Inspector General Act, 5 U.S.C.App. 3, § 8G(b). (*Id.*).

NALC and APWU are parties to separate collective bargaining agreements with the USPS, that set forth terms and conditions of their members' employment. (*Id.* ¶ 11, 12).

### B. *Facts*

For purposes of this motion, the facts alleged in the complaint are assumed to be true.

The USPS routinely acquires employees' medical information for a variety of reasons, including, *inter alia,* determining whether injured employees are fit for duty or eligible for disability retirement. (*Id.* ¶ 14). The USPS's longstanding practice was to request the information directly from its employees. (*Id.*).

In 2006, defendants instituted a new policy (the "Policy") authorizing OIG agents to contact—*ex parte*—employees' physicians and medical care providers to obtain medical information. (*Id.* ¶ 16). The affected employees are neither aware of such communications nor do they consent to the release of their medical information. (*Id.*). The information is sought in connection with investigations into potential criminal misconduct and eligibility for health benefits and workers' compensation. (*Id.*). Medical information is also sought for issues relating to job performance and disciplinary action. (*Id.*).

To obtain the employees' medical records, OIG agents present health care providers with a letter (the "HCP letter") claiming that defendants have a right to review the protected health information. (*Id.* ¶ 19). The HCP letters "differ somewhat from case to case, but are generally similar in form." (*Id.*). An example of an HCP letter advises:

> This letter provides you with the statutory and regulatory authority that allows you to release protected health information requested by the [OIG] of the [USPS] when it is engaged in oversight activities involving the Office of Workers' Compensation Programs (OWCP).
>
> Health care providers such as yourself are permitted to disclose protected health information to health oversight agencies without the written consent or authorization of the individual when these agencies are conducting oversight activities authorized by law. The review of protected health information is recognized as a necessary oversight activity because it is relevant in determining beneficiary eligibility. 45 C.F.R. § 164.512(d)(1)(iii).
>
> [OIG] is a health oversight agency because it oversees through our investigations a government program in which health information is necessary to determine eligibility or compliance. 45 C.F.R. § 164.501.
>
> Furthermore, when the Department of Health and Human Services (HHS) first proposed rules to implement the Health Insurance Portability and Accountability Act of 1995 (HIPAA), it included a list of agencies that could be health oversight agencies. HHS listed "Offices of Inspectors General of federal agencies" as health oversight agencies.
>
> Finally, the Inspector General Act of 1978 authorized [OIG] to investigate fraud, waste, and abuse in Postal Service programs and operations, one of which programs is the Postal Service's participation in OWCP. 5 U.S.C.App. 3 § 6(a)(4).
>
> Normally, the individual would have a right to know that disclosure of the individual's protected health information had been made. However, because alerting the individual of this disclosure would likely jeopardize our oversight activities, we request at this time that you refrain from notifying the individual of your disclosure for one year from the date of this letter. Regulations authorize you to withhold notification under these circumstances. 45 C.F.R. § 164.528(a)(2)(II)(C).

(Compl. Ex. A).

NALC learned of defendants' Policy in September 2007. William H. Young, NALC President, immediately wrote to the USPS Board of Governors demanding that it direct OIG to stop gathering employees' health information without their

knowledge or consent. (Compl. Ex. B). On November 2, 2007, the Board of Governors responded, explaining:

> The Postal Service has reviewed the issues raised in your letter, and concluded that [OIG] is operating within the statutory authority of HIPAA, as well as its own statutory authority under the provision of Title 39 and the Inspector General Act of 1978 in seeking these records.

(Compl. Ex. C).

## C. *Procedural History*

Plaintiffs commenced this action on January 17, 2008. The complaint alleges that the Policy: (1) constitutes *ultra vires* conduct because it exceeds the defendants' statutory authority under the Inspector General Act (the "IG Act") in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d–2, and the Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a(e)(2); (2) violates postal employees' constitutional right to privacy; and (3) violates the Fourth Amendment.

On June 6, 2008, the Government moved to dismiss the complaint.

## DISCUSSION

The USPS argues that the complaint must be dismissed because plaintiffs do not have associational standing to bring this action. First, I discuss the standards governing subject matter jurisdiction and associational standing. I then discuss plaintiffs' claims in turn. For each claim, I discuss the applicable law and the corresponding factual inquiry necessary to resolve the claim. I conclude that individualized proof is not necessary to resolve any of the three claims. I conclude further that the first count of the complaint states a plausible claim. Accordingly, the Government's motion to dismiss is denied. Plaintiffs may proceed with this case.

## A. *General Standards*

### 1. *12(b)(1) Standard*

As the parties "seeking to invoke the subject matter jurisdiction of the district court," *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996), plaintiffs must demonstrate by a preponderance of the evidence that there is subject matter jurisdiction. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). Though "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Assocs.,* 932 F.Supp. 94, 95 (S.D.N.Y.1996), a court should " 'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." *Aurecchione,* 426 F.3d at 638 (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)); *see also Sharkey v. Quarantillo,* 541 F.3d 75, 83 (2d Cir.2008). Contested jurisdictional allegations need not be accepted as true, and the Court may consider matters outside the complaint. *Jarvis v. Cardillo,* No. 98 Civ. 5793(RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr. 6, 1999).

### 2. *Associational Standing*

■ An association that has not itself suffered an injury has standing to sue on behalf of its members if it meets the standard set out by the Supreme Court in *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Under *Hunt,* an association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343, 97 S.Ct. 2434.

The third prong of the *Hunt* test is a prudential consideration, not a constitu-

tional requirement. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). In some cases, "competing considerations outweigh any prudential rationale against representational standing-for example, where practical obstacles prevent a party from asserting rights on its own behalf." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* No. MASTER FILE 1:00–189, MDL 1358(SAS), 2005 WL 1500893, at *4 (S.D.N.Y. June 24, 2005).

■ If an association seeks prospective relief, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Even when an association requests equitable relief, however, the third prong of the *Hunt* test is not automatically satisfied. *See Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press,* 990 F.Supp. 245, 248 (S.D.N.Y.1997) ("Even when an association requests an injunction, the claim it asserts may be such that it cannot be resolved on an association-wide basis."). An association lacks standing "where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof or where the relief requested would require the participation of individual members in the lawsuit." *Bano v. Union Carbide Corp.,* 361 F.3d 696, 713 (2d Cir.2004) (quotations, citations, and alterations omitted). Courts vary as to the amount of individualized proof and participation of individual members they will permit before concluding that associational standing is precluded. *See, e.g., Nat'l Ass'n of Coll. Bookstores, Inc.,* 990 F.Supp. at 250 ("The fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing."); *Employees Committed For Justice v. Eastman Kodak Co.,* 407 F.Supp.2d 423, 434

(W.D.N.Y.2005) ("The third prong of *Hunt* does not require dismissal for lack of standing simply because several members of an association seeking injunctive relief testify or participate in a lawsuit."). Furthermore, when a case raises a pure question of law, the Court does not need to "consider the individual circumstances of any aggrieved [ ] member." *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock,* 477 U.S. 274, 287, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

### B. *Ultra Vires Claim*

■ Count One of plaintiffs' complaint alleges that defendants "have exceeded their statutory authority by adopting a policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent, in violation of public policy as defined by the HIPAA Privacy Regulations and the Privacy Act of 1974." (Compl. ¶ 26). The USPS argues that plaintiffs lack associational standing to bring this claim because resolution of the claim requires individualized proof. To the contrary, I hold that this claim raises purely legal questions and thus may proceed on the basis of associational standing. Hence, this prong of the motion is denied.

#### 1. *OIG's Authority*

The enactment of the IG Act "reflected congressional concern that fraud, waste and abuse in United States agencies and federally funded programs were reaching epidemic proportions." *United States v. Westinghouse Elec. Corp.,* 788 F.2d 164, 165 (3d Cir.1986) (internal quotations omitted). Pursuant to the IG Act, OIG may "initiate, conduct and supervise such ... investigations in the [USPS] as the Inspector General considers appropriate." 5 U.S.C. app. 3, § 8G(f)(3)(B)(i). OIG is re-

sponsible for "detecting and preventing fraud, waste, and abuse in the programs and operations of the Postal Service." 39 C.F.R. § 230.1(d). OIG has broad authority to access information and documentation. 5 U.S.C. app. 3 § 6(a) (OIG has authority to, *inter alia,* "have access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable establishment ... make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable.").

### 2. *HIPAA and the Privacy Act*

HIPAA was enacted by Congress "to ensure the confidentiality of protected health information maintained by covered entities." *Gratton v. United Parcel Service, Inc.,* No. CV 07–3071(TCP)(AKT), 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008) (quotations omitted). HIPAA's Privacy Regulations, 45 C.F.R. Parts 160 and 164, authorize use and disclosure of protected health information "without the written authorization of the individual ... or the opportunity for the individual to agree or object" in a few limited circumstances. 45 C.F.R. § 164.512. Two are applicable to this case and are discussed in turn.

The Privacy Regulations permit disclosure of protected health information for a "law enforcement purpose" to a "law enforcement official" provided certain conditions are met. *Id.* § 164.512(f). Disclosures may be made pursuant to an "administrative request" if:

(1) The information sought is relevant and material to a legitimate law enforcement inquiry;

(2) The request is specific and limited in scope to the extent reasonably practica-

ble in light of the purpose for which the information is sought; and

(3) De-identified information could not reasonably be used.

*Id.* § 164.512(f)(1)(ii)(C). The administrative request may be made via "administrative subpoena or similar process or by a separate written statement that, on its face, demonstrates that the applicable requirements have been met." *Id.* § 164.514(h)(2)(i)(A).

The Privacy Regulations also permit disclosure of protected health information "to a health oversight agency for oversight activities authorized by law." 45 C.F.R. § 164.512(d)(1). The oversight activities include, *inter alia,* "civil, administrative, or criminal investigations" and "licensure or disciplinary actions." *Id.* The oversight must be of: (1) the health care system; (2) government benefit programs; (3) entities subject to government regulatory programs for which health information is necessary; or (4) entities subject to civil rights laws for which health information is necessary. *Id.*

The Privacy Act requires government agencies to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2).

### 3. *Individualized Proof Not Required*

The USPS contends that resolution of this claim requires an analysis of each investigation to determine whether the disclosure was permissible under either the law enforcement or health oversight exception and whether the request complied with the Privacy Act. I disagree. Plaintiffs' claim raises legal issues that do not require individualized proof.

For example, the claim raises the legal question of whether the IG Act permits OIG agents to search employees medical records without their knowledge or consent. Although HIPAA permits health care providers to disclose protected health information in certain situations, it does not authorize OIG agents to request the information under the IG Act. Plaintiffs contend that OIG is exceeding its authority merely by requesting the information; resolution of this legal question does not require individualized proof. While I disagree with plaintiffs' argument that the law enforcement and health oversight exceptions are irrelevant to this claim (as they are specifically mentioned in the complaint), the exceptions are more appropriately analyzed when considering the merits of the claim, not when considering the issue of plaintiffs' standing. In other words, while the USPS could assert individualized circumstances on a case-by-case basis to argue that the exceptions apply, individualized inquiry is not required to resolve the broader legal question of whether OIG has the legal authority to ask for the information in the first place.

The claim also raises the question of whether the Policy complies procedurally with the requirements of HIPAA. Plaintiffs argue that the HCP letters fail to satisfy the provisions of the law enforcement exception because they do not explain, on their face, how the requirements of the section have been met. This too is a purely legal inquiry.

As to the Privacy Act, whether it applies to federal employers investigating their own employees is an "open question" in the Second Circuit. *Carton v. Reno*, 310 F.3d 108, 111 (2d Cir.2002). Even if the Privacy Act applies, associational standing is not precluded. I recognize that the Second Circuit has evaluated "[t]he specific nature of each case ... [to] determine whether an agency has fulfilled its obligation[s]" under the Privacy Act. *Id.* at 111–12 (quotations omitted). In this case, however, the Court can categorize plaintiffs' members into large groups to determine whether the agency has met its obligations under the Privacy Act. Utilizing different categories—*e.g.*, employees investigated for workers' compensation fraud and those investigated for issues of job performance—the Court can determine whether "third party sources may be contacted first when practical considerations, such as confirming or denying false statements, require this or when the information can only be obtained from third parties.'" *Id.* at 112 (quoting *Hudson v. Reno*, 130 F.3d 1193, 1205 (6th Cir.1997)). Resolution of this claim will not require the level of individualized proof that precludes associational standing. Accordingly, plaintiffs have associational standing to allege *ultra vires* conduct.

### 4. The Claim is Plausible

The USPS moves, in the alternative, to dismiss the *ultra vires* claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The USPS argues that the complaint fails to adequately allege how the Policy violates the HIPAA Privacy Regulations and the Privacy Act. For the following reasons, this prong of the motion is denied.

To survive a motion to dismiss, a plaintiff's claim must be "plausible." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007). Under the plausibility standard, a district court's inquiry focuses on whether the complaint pleads " 'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir.2007) (quoting *Bell Atlantic Corp.*, 127 S.Ct. at 1974).

■ Plaintiffs' *ultra vires* claim is plausible. The claim adequately alleges that

OIG exceeds its authority by requesting protected health information directly from employees' health care providers without their knowledge or consent. Furthermore, the "adverse effect" on the employees— necessary to state a Privacy Act violation, 5 U.S.C. § 552a(g)(1)(D)—is destruction of the confidentiality of the employees' protected health information and violation of the right to privacy, as discussed below. Thus, plaintiffs' claim is sufficiently pled. The Rule 12(b)(6) prong of the motion is denied.

## C. *Constitutional Privacy Rights*

Count Two of plaintiffs' complaint alleges that defendants violate USPS employees' constitutional right to privacy by obtaining and disclosing employees' protected health information without their knowledge or consent.

### 1. *Right to Privacy of Medical Information*

 The Second Circuit has held that there is a constitutional right to privacy in personal information, including medical information. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) ("Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."). The right, however, is "conditional" and "can be overcome if the government can demonstrate a substantial interest that outweighs the [plaintiffs'] right to privacy." *Grosso v. Town of Clarkstown,* No. 94 Civ. 7722(JGK), 1998 WL 566814, at *6 (S.D.N.Y. Sept. 3, 1998). When balancing the government's interest against an individual's privacy rights, the Court must consider:

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent

nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir. 1980)).

### 2. *Application*

 A determination of the constitutional privacy claim would require little, if any, individualized proof. Applying the multifactored test above would not require individualized proof as the factors would be the same—or nearly the same—in every case: the type of record is medical; the information is protected health information; the potential harm is to the patient and also harm to the relationship between the patient and his or her health care provider; and the safeguards, need for access, and policy basis are found in the IG Act and the Privacy Regulations. No individualized proof would be necessary for the defendants to prove its "sufficiently weighty government purpose" in requesting and obtaining the information. *Statharos v. New York City Taxi and Limousine Com'n,* 198 F.3d 317, 323 (2d Cir.1999). Accordingly, plaintiffs have associational standing to bring a claim for a violation of constitutional privacy rights.

## D. *Plaintiffs' Fourth Amendment Claims*

Finally, the USPS argues that plaintiffs do not have standing to bring a Fourth Amendment claim for two reasons: (1) plaintiffs' members do not have standing to sue in their own right, and (2) individualized proof is required. Because I find that plaintiffs' members do have standing

to sue in their own right and individualized proof is not required, plaintiffs have associational standing to proceed with their Fourth Amendment claim.

### 1. *Plaintiffs' Members Have Standing*

■ Plaintiffs' members have standing to sue in their own right because even though they do not have possession or ownership of their medical records, their expectation of privacy is reasonable.

### a. *Fourth Amendment Standing*

■ A plaintiff "lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable." *United States v. Fields,* 113 F.3d 313, 320 (2d Cir.1997). To evaluate the reasonableness of a privacy expectation, a person's "property or possessory interest" in the place or items searched is generally one factor considered. *Id.* (internal citations omitted). "Lack of such an interest[, however,] does not rule out the possibility that he may still show a reasonable expectation of privacy." *Id.*

### b. *Reasonable Expectation of Privacy*

Defendants argue that—under Second Circuit law—a person does not have a constitutionally protected property interest in his or her medical records maintained by a health care provider. Thus, according to the USPS, plaintiffs' members do not have standing to bring a Fourth Amendment claim.

The USPS's argument rests entirely on whether the employees have a property interest in their medical records. To support their argument, defendants cite one Second Circuit Court of Appeals case and one Eastern District of New York case. Neither case is directly on point. *Gotkin*

*v. Miller,* 514 F.2d 125, 129 (2d Cir.1975), involved a former mental patient's right to inspect and copy her own medical records. The Second Circuit held that the Fourteenth Amendment did not support the former patient's claim of a "constitutionally protected, unrestricted property right directly to inspect and copy their hospital records." *Id.* The Court also held the Fourth Amendment inapplicable to the case. *Id.* at 130. *Gotkin* is distinguishable from the case at hand for at least the following reasons: (1) the Second Circuit was reviewing a grant of summary judgment; (2) standing was not at issue; (3) the case did not involve the Government's search of plaintiff's medical records; and, thus (4) the Fourth Amendment was not applicable. Accordingly, *Gotkin* does not preclude a finding of standing in this case.

Similarly, *Webb v. Goldstein,* 117 F.Supp.2d 289, 295 (E.D.N.Y.2000), is distinguishable. In that case, the Court denied plaintiff's Fourth Amendment claim holding that prison medical records did not belong to plaintiff. *Id.* The Court found that the Fourth Amendment was not violated when parole officers provided state authorities with copies of plaintiff's medical records. *Id.* The Court dismissed plaintiff's claim because the medical records "neither belonged to nor were ever in [plaintiff's] possession [and] were the property of New York State." *Id.* In *Webb,* plaintiff's medical records were prison medical records, and the Court emphasized that they belonged to the State. This is distinguishable from the case at hand, where the medical records are held by the health care provider and the medical examination and/or procedures that produced the records were conducted privately.

Even assuming postal employees do not have a constitutionally protected property interest in their medical records, a property interest is only one factor to be consid-

ered. Defendants fail to acknowledge that a reasonable expectation of privacy may still exist without a property interest. Although a person's "privacy right in his medical records is neither fundamental nor absolute," *Crawford v. Manion*, No. 96 Civ. 1236(MBM), 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997), USPS employees have—at a minimum—standing to bring suit based on a reasonable expectation of privacy in their medical records. *Accord United States v. Knoll*, 16 F.3d 1313, 1321 (2d Cir.1994) (internal citations omitted) ("[T]he protection of the Fourth Amendment extends to those papers that a person leaves with his or her lawyer.... This is because the client has a subjective expectation that such papers will be kept private and such expectation is one society recognizes as reasonable.").

### 2. *Individualized Proof Not Required*

■■■ As discussed below, plaintiffs' Fourth Amendment claim does not require individualized proof precluding associational standing.

### a. *Fourth Amendment Standard*

■■■ The Fourth Amendment protects individuals against unreasonable searches and seizures. A search must generally be supported by a warrant issued upon probable cause. *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). The Supreme Court has held, however, that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Id.* When a search serves "special governmental needs" the Court must "balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Id.* at 665–66, 109 S.Ct. 1384. "In-

dividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 717, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *see also Lukas v. TriBorough Bridge and Tunnel Auth.*, No. CV-92-3680 (CPS), 1993 WL 597132, at *7 (E.D.N.Y. Sept. 15, 1993) ("Traditional Fourth Amendment safeguards applicable in the context of criminal investigations cannot be avoided simply because the agency conducting the search is not a governmental law enforcement agency but a governmental employer ostensibly supervising its employees.").

### b. *Application*

The USPS contends that a reasonableness standard—not a search warrant or probable cause standard—should be applied to determine the alleged Fourth Amendment violations in this case. The USPS further argues that a reasonableness standard precludes associational standing because the facts surrounding each employee, investigation, and search would have to be analyzed. I disagree on both points.

The USPS argues that a reasonableness standard applies based on the Supreme Court's holding in *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). In *O'Connor*, the Supreme Court rejected the requirements of a warrant and probable cause and instead adopted a reasonableness standard for "work-related" searches. *Id.* at 723–24, 107 S.Ct. 1492. This case, however, is distinguishable from *O'Connor* because the searches of medical records in the possession of medical providers do not fit into the framework intended by the Court.

*O'Connor* applied solely to searches of the workplace. The Supreme Court defined the workplace as "those areas and items that are related to work and are

generally within the employer's control." *Id.* at 715, 107 S.Ct. 1492. Although the term "work-related" was used by the *O'Connor* Court, neither *O'Connor* nor the cases considered by the Court in reaching its holding involved any area physically outside of the workplace.[1] The Supreme Court repeatedly made this distinction:

> Balanced against the substantial government interests in the efficient and proper operation of the workplace are the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts.

*Id.* at 725, 107 S.Ct. 1492. Here, the medical records searched are not kept in the employees' desk, office, or office building. The USPS does not represent that the medical information was created as part of USPS's employment application or is necessarily work-related. The Policy apparently would extend to medical records in the possession of employees' purely private health care providers relating to medical matters that could have no bearing on work-related issues. Hence, this case is not controlled by *O'Connor*. Accordingly, it is not clear, at this early stage of litigation, that a reasonableness standard and not a probable cause standard should be applied to determine the Fourth Amendment claim.

Moreover, even if a reasonableness standard were appropriate, I disagree with the USPS's contention that "the Court may only determine the reasonableness of the Government's intrusion on a case-by-case basis." (P. Mem. 15). To resolve this claim, the Court may indeed have to categorize plaintiffs' members into large groups—*e.g.*, investigations related to criminal conduct and those not related to criminal conduct—but this would not require individualized proof, nor the participation of individual members. A court can determine the reasonableness of the defendants' search of the employees' medical records by weighing the Government's interest in obtaining the protected health information (*i.e.*, the need to investigate workers' compensation fraud) against the employees' expectation of privacy in medical records. Accordingly, plaintiffs have associational standing to bring their Fourth Amendment claim.

### CONCLUSION

For the reasons above, the Government's motion to dismiss is denied. The parties shall attend a pre-trial conference on April 6, 2009 at 11:00 a.m.

SO ORDERED.

---

1. *See, e.g., United States v. Nasser,* 476 F.2d 1111, 1123 (7th Cir.1973) (office search); *United States v. Collins,* 349 F.2d 863, 868 (2d Cir.1965) (work area search); *United States v.* *Bunkers,* 521 F.2d 1217 (9th Cir.1975) (locker search); *United States v. Blok,* 188 F.2d 1019, 1021 (D.C.Cir.1951) (desk search).